**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **OMARRIAN JONES,** | ) | |
| **#M29668,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-00386-NJR** |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **JACOB WEATHERFORD,** | ) | |
| **DR. CHRISTINA FLOREANI,** | ) | |
| **DR. LISA GOLDMAN,** | ) | |
| **DR. EVA LEVEN,** | ) | |
| **DR. MYRON MCSHAN,** | ) | |
| **JANE DOE,** | ) | |
| **JOHN VARGA,** | ) | |
| **JACQUELINE LASHBROOK,** | ) | |
| **FRANK LAWRENCE,** | ) | |
| **JOHN BALDWIN,** | ) | |
| **ROB JEFFREYS,** | ) | |
| **MELISSA PAPPAS,** | ) | |
| **MEGAN VANPELT,** | ) | |
| **DR. ROBERT GLENN,** | ) | |
| **DR. RAJENDRA GUPTA,** | ) | |
| **DR. RAYMOND MARQUEZ,** | ) | |
| **JIM DOES, and** | ) | |
| **JOHN DOES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Omarrion Jones, an inmate of the Illinois Department of Corrections ("IDOC")
who is currently incarcerated at Dixon Correctional Center ("Dixon"), brings this action for
deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 regarding his medical care
and conditions of confinement while at Menard Correctional Center ("Menard") and Dixon.

Plaintiff's original Complaint, First Amended Complaint, and corresponding motions, filed *pro se*, were dismissed for noncompliance with Rule 8 and for failure to state a claim. *See* Doc. 14. The Court recruited counsel to represent Plaintiff, and Plaintiff's Second Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim must cross "the line between possibility and plausibility." *Id.* at 557. On screening, the Court accepts as true all of the well-pleaded facts in the Second Amended Complaint and draws all reasonable inferences in favor of Plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court also must consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## SECOND AMENDED COMPLAINT

In the Second Amended Complaint, Plaintiff alleges the following: He has been diagnosed with mental illnesses, attention deficit/hyperactivity disorder, depression, and suicidal tendencies, and classified for a period of time as Seriously Mentally Ill ("SMI"). (Doc. 33, pp. 5, 10). While at Menard and Dixon, he has been continually placed in cells with other inmates who are unprepared or ill-equipped to deal with a person with mental health issues and disabilities. (*Id.* at p. 6). As a result, he has had altercations and violent conflicts with cellmates, and he injured his

shoulder during one conflict. (*Id.* at p. 6). At one point, Plaintiff asked Mental Health Professional VanPelt if he could be placed in a single cell. (*Id.* at p. 6).

While at Menard in June 2018, he became depressed and suicidal. (*Id.* at p. 5). On August 30, 2018, he asked gallery officers and prison staff, "John Does," to place him on crisis watch, but they left him in his general population cell. (*Id.* at p. 6). Plaintiff then attempted suicide with a rope. His cellmate took the rope away and gave it to the evening nurse, Jane Doe. (*Id.*). Jane Doe said she would get help, but no one intervened or provided care. (*Id.*). He then continued to attempt suicide and inflict self-harm that evening but was not placed in a crisis cell until two in the morning. (*Id.*).

Plaintiff was placed in crisis cells for suicidal thoughts from August 31, 2018, until October 26, 2018. (*Id.*). During the time he spent in crisis cells 503 and 509, he was subjected to unconstitutional conditions of confinement. (*Id.* at p. 7). The cells were filthy with urine, blood, and feces on the walls, dirty floors and mattress, and improperly functioning sinks and toilets. While in cell 509, the light was left on at all times, and he was exposed to extremely high heat and low air flow, aggravating his asthma. (*Id.* at p. 7). Because of the extreme conditions, three other inmates in adjacent cells died. Plaintiff complained to Dr. Leven about the inhumane conditions and his lack of medical treatment, but she took no action. (*Id.* at p. 9).

While on crisis watch, Plaintiff had a meeting with Dr. Floreani and Mental Health Professional Weatherford on September 19, 2018. (*Id.* at p. 8). Plaintiff told them he was suicidal. (*Id.* at pp. 18-19). They responded that they did not believe him and ordered him to be released from crisis watch and returned to general population. He returned to his crisis cell with instructions to be taken off crisis watch classification and was given back his property. Plaintiff then attempted suicide by hanging himself with his shoelaces. (*Id.* at p. 8).

Following the incident, Dr. Floreani changed Plaintiff's diagnosis and medications without explaining the medication and its side effects. (*Id.* at p. 9). He was taken off of Wellbutrin without his knowledge, and all of his requests for Wellbutrin to be reinstated have been denied. (*Id.* at p. 10). Between September and October 2018, Plaintiff was forced to take medication by Dr. Floreani that caused him to blackout. (*Id.* at p. 12).

Because of the multiple suicide attempts, he suffers from neck and upper body injuries. (*Id.* at pp. 6, 9). Plaintiff was notified that physical therapy appointments would be scheduled to treat his injuries, but he never received any treatment for neck and back pain. (*Id.* at p. 9).

## SEVERANCE

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607; 3A *Moore's Federal Practice* § 20.06, at 2036–45 (2d ed.1978). Rule 18 allows a party to join unrelated claims against defendants in a lawsuit. Notably, however, this rule applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Ass'n, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983)(citing 7 Charles Alan Wright et al., *Federal Practice & Procedure*).

Here, Plaintiff's claims pertaining to his treatment (or lack thereof) at Menard and Dixon are not properly joined in a single action. The discretionary actions taken by different officials at different prisons do not constitute the same series of transactions and occurrences with questions of fact common to each of the defendants. The defendants employed at Menard and those at Dixon

have made independent judgments about Plaintiff's condition, treatment, and grievances as it appeared to them at the time. As a result, John Baldwin, former IDOC Director, John Varga, Warden of Dixon, Dr. Raymond Marquez, psychiatrist at Dixon, and Rob Jeffreys, current IDOC Director, from whom Plaintiff requests injunctive relief regarding his current medical treatment at Dixon, are not properly joined under Rule 20(a)(2), and the claims against them pertaining to alleged violations that occurred or are occurring at Dixon do not belong in this action.

For these reasons, the Court exercises its authority under Rule 21 and severs the improperly joined claims. Any claims directed against Varga, Marquez, Jeffreys, and Baldwin regarding Plaintiff's treatment at Dixon will be severed into a separate action. This separate action will have a newly assigned case number and shall undergo preliminary review pursuant to Section 1915A after the new case number and judge assignments have been made.

## PRELIMINARY DISMISSALS

Plaintiff brings claims against John Does, whom he describes as prison staff and corrections officers in the North I, Gallery 3 on August 30, 2018, and Jim Does, described as corrections officers in the North II, Gallery 5 from on or about August 31, 2018, to September 5, 2018, and September 14, 2018, to October 25, 2018. (Doc. 33, p. 5). While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of staff violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)(citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a plaintiff does nothing but state that a group of corrections officers harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. That is, Plaintiff may not know the name of individual defendants, but

he must describe the "who, what, why, where, and how" that form the basis of the claim against that person (*e.g.* John Doe #1 did X and John Doe #2 did Y). To allow otherwise would be effectively allowing Plaintiff to amend his complaint further at will without review of this Court, a result contrary to both the local rules and Section 1915A. Although the Complaint does reference the actions of a Lieutenant, a Sergeant, and three gallery officers, these individuals are not listed in the case caption, but grouped in with the description of "John Does." *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005)(to be properly considered a party a defendant must be "specif[ied] in the caption"). Because the Complaint neither individually describes the unknown defendants nor their conduct, Plaintiff could ascribe any conduct he chooses to any number of people that occurred at any time during the relevant time period. For these reasons, Defendants John Does and Jim Does are dismissed without prejudice. Should Plaintiff amend his complaint as the case progresses, he must specifically describe the unconstitutional conduct that any unknown defendant engaged in and name such defendant in the case caption.

Furthermore, any request for injunctive relief against the Menard Defendants is denied without prejudice as moot, given Plaintiff's transfer from the facility. Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Menard under the conditions described in the Second Amended Complaint would it be proper for the Court to consider injunctive relief against those Defendants. *See Maddox v. Love,* 655 F.3d 709, 716 (7th Cir. 2011)(citing *Ortiz v. Downey,* 561 F. 3d 644, 668 (7th Cir. 2009)).

## DISCUSSION

Based on the allegations in the Second Amended Complaint, the Court finds it convenient to delineate the claims in this case into the following twelve Counts:

**Count 1:** Eighth Amendment claim against Jane Doe for failure to protect and deliberate indifference to Plaintiff's risk of suicide on August 30, 2018.

**Count 2:** Eighth Amendment claim against Dr. Floreani and Weatherford for failure to protect and deliberate indifference to Plaintiff's risk of suicide on September 19, 2018.

**Count 3:** Eighth Amendment claim against Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. Leven, Dr. Goldman, Dr. Floreani, Weatherford, VanPelt, and Pappas for subjecting Plaintiff to unconstitutional conditions of confinement while on crisis watch in cell 509 from August 31, 2018, until September 5, 2018, and in cell 503 from September 14, 2018, until October 26, 2018.

**Count 4:** Fourteenth Amendment claim against Jeffreys, Lawrence, Baldwin, and Lashbrook for interference with the grievance process.

**Count 5:** Violation of the Americans with Disabilities Act and Rehabilitation Act claim against Jeffreys and Lawrence.

**Count 6:** Eighth Amendment claim against Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. McShan, Dr. Goldman, Dr. Gupta, Dr. Glenn, Dr. Floreani, Dr. Leven, Weatherford, VanPelt, and Pappas for failing to protect Plaintiff from himself, prison staff, medical providers, and other inmates.

**Count 7:** *Monell* claim against Jeffreys, Lawrence, Baldwin, and Lashbrook, in their official capacities, for unconstitutional practices and policies.

**Count 8:** Eighth Amendment claim against Dr. McShan, Dr. Goldman, Dr. Gupta, Dr. Floreani, Weatherford, Dr. Leven, Dr. Glenn, VanPelt, Pappas, and Wexford for exhibiting deliberate indifference to Plaintiff's serious medical needs regarding treatment for his mental illnesses and related injuries while at Menard.

**Count 9:** First Amendment claim against Dr. Floreani for retaliating against Plaintiff by changing his diagnosis and medication.

**Count 10:** Fourteenth Amendment claim against VanPelt for ignoring or denying Plaintiff's requests for help with grievance procedure.

**Count 11:** Intentional infliction of emotional distress claim in violation of Illinois state law against Defendants.

**Count 12:**    Eighth Amendment claim against dental staff at Menard for deliberate indifference to Plaintiff's medical needs regarding dental treatment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Second Amended Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Counts 1 and 2

Suicide, attempted suicide, and other acts of self-harm clearly pose a "serious" risk to an inmate's health and safety, and may provide the foundation for deliberate indifference to medical needs and failure to protect claims. *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)(quoting *Sanville v. McCaughtry,* 266 F.3d 724, 733 (7th Cir. 2001)). Where the harm at issue is a suicide or attempted suicide, deliberate indifference requires "a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded that risk." *Collins,* 462 F.3d at 761 (citations omitted).

Plaintiff's claims that (1) Jane Doe was given the rope he had used to attempt suicide and then did not return to Plaintiff's cell or ensure he received treatment or care; and (2) Dr. Floreani and Weatherford removed him from crisis watch after he informed them he was still suicidal are sufficient at this early stage for Count 1 to proceed again Jane Doe and Count 2 to proceed against Dr. Floreani and Weatherford.

---

[1] *Twombly*, 550 U.S. at 570. This includes any claims against Dr. Caldwell who allegedly did not arrange physical therapy appointments for Plaintiff, (Doc. 33, p. 9), but who is not named as a defendant in the case caption. *See Myles*, 416 F.3d at 551–52. Claims regarding Mental Health Provider Pappas regarding "her dealings" with Plaintiff are also dismissed without prejudice. (Doc. 33, p. 12). Other than stating that he wrote a grievance regarding her conduct towards him while he was in a crisis cell, Plaintiff does not assert any constitutional violation regarding Pappas's actions. *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)("Each defendant is entitled to know what he or she did that is asserted to be wrongful.").

**Count 3**

Conditions of confinement which result in serious "deprivation of basic human needs" and "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). *See also Vinning-El v. Long,* 482 F.3d 923, 924 (7th Cir. 2007); *Cobian v. McLaughlin*, 717 F. App'x 605, 611 (7th Cir. 2017). To be held liable for unconstitutional conditions of confinement, a prison official must be deliberately indifferent to health or safety; he or she must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must actually draw the inference. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Wilson v. Seiter,* 501 U.S. 294, 303 (1991); *Gills v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006).

Plaintiff's allegations that while on crisis watch he was kept in filthy cells with extreme heat, the lights on at all times, and improperly working toilets and sinks is enough to survive screening against Dr. Leven, who he claims he complained to about the cell conditions, but never returned to speak to him.

Count 3 will be dismissed against Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. Goldman, Dr. Floreani, Weatherford, VanPelt, and Pappas who Plaintiff claims were aware of the cell conditions and still allowed him to be placed in harsh, subhuman conditions. He claims that Defendants were on notice as to cruel and inadequate cell conditions from previous cases, grievances, and complaints filed by other prisoners. But the deliberate indifference standard does not use the "notice" standard. It is not enough that Defendants were generally aware of the conditions of confinement of crisis cells at Menard. Rather, Defendants must know that *Plaintiff* was at risk of serious harm and then consciously disregard that risk.

Plaintiff states that he wrote and submitted grievances regarding his confinement

conditions while on crisis watch and never received a reply from any official or staff at Menard. (Doc. p. 11). The Seventh Circuit has been clear that failure to properly respond to grievances and letters adequately alleges the subjective element at the pleading stages. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Plaintiff, however, does not name any Defendants associated with this allegation. Therefore, Count 3 shall be dismissed as to Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. Goldman, Dr. Floreani, Weatherford, VanPelt, and Pappas.

### Count 4

Plaintiff alleges that Jeffreys, Lawrence, Baldwin, and Lashbrook through their agents, servants, and employees, maintain policies, practices, and customs that allow the grievances of inmates to be thrown away, disregarded, or otherwise lost. (Doc. 33, p. 22). As a direct result of these policies, his grievances went unaddressed causing him to suffer mental and physical injuries. (*Id.* at p. 23).

Issues with grievance procedures, however, do not constitute violations of the First or Fourteenth Amendments. Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the due process clause. *Owens v. Hinsley,* 635 F.3d 950, 953–54 (7th Cir. 2011); *George,* 507 F.3d at 609; *Grieveson v. Anderson*, 538 F.3d 763, 772 & n.3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). "[A]ny right to a grievance procedure is a procedural right, not a substantive one." *Antonelli,* 81 F.3d at 1430. "Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Id.* Further, a federal court does not enforce state law administrative procedures. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988)(en banc), *cert. denied*, 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Thus, the alleged failure to follow administrative procedures is not

actionable under Section 1983, and the mishandling and denying of grievances does not make a defendant personally involved in the constitutional violation alleged in the grievance. *See Owens v. Evans,* 878 F.3d 559, 563 (7th Cir. 2017).

That said, inmates have the right to petition the government for redress of grievances under the First Amendment, which includes access to the courts to present their complaints. *Bridges v. Gilbert,* 557 F.3d 541, 553 (7th Cir. 2009). Here, Plaintiff's access to the courts has not been impeded by the alleged actions, as the unavailability of administrative remedies is not a bar to potential litigants bringing their claims. *See Ross v. Blake*, 136 S.Ct. 1850, 1860 (2016); *Hill v. Snyder,* 817 F.3d 1037, 1041 (7th Cir. 2016). Therefore, there is no Fourteenth or First Amendment violation alleged in the Second Amended Complaint for maintaining policies that allow for the mishandling of grievances.

Plaintiff claims that the policies regarding grievance procedures also violated his rights under the Eighth Amendment and constituted cruel and unusual punishment. (Doc. 33, pp. 22-23). Because the "Constitution does not require that a prison or jail provide a grievance procedure," *Subil v. Marshal,* No. 04-cv-0257-PS, 2007 WL 2446780 at *1 (N.D. Ind. Aug, 24, 2007)(citations omitted), violations of or failure to provide a grievance procedure would not constitute cruel and unusual punishment, which requires a showing that the inmate was denied "the minimal civilized measure of life's necessities[.]" *Farmer,* 511 U.S. at 834.

The Court also notes that any claim against these Defendants based solely on their positions as administrators fails, because the doctrine of *respondeat superior* does not apply to Section 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). For these reasons Count 4 is dismissed without prejudice.

**Count 5**

Under the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, because of that disability … be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The Rehabilitation Act ("RA") likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and the RA is the same, except that the RA includes as an additional requirement the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 685 F.3d 667, 671 (7th Cir. 2012)(citing 29 U.S.C. § 705(2)(B)). Discrimination under both includes the failure to accommodate a disability. *Jaros*, 684 F.3d at 672 (citation omitted).

Plaintiff alleges that he is a qualified person with a disability due to his mental illnesses and that his classification as Seriously Mentally Ill was arbitrarily removed in retaliation for complaining about his medical care, resulting in him not receiving proper mental health treatment. These allegations are sufficient to articulate a colorable ADA and RA claim. Defendant Rob Jeffreys, in his official capacity as the current Director of IDOC, is the proper defendant for Plaintiff's ADA and Rehabilitation Act claim. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Accordingly, Plaintiff will be allowed to proceed with Count 5 against Rob Jeffreys in his official capacity. Count 5 will be dismissed as to Warden Lawrence, as employees of IDOC are not amenable to suit under the ADA or RA. *Id.*

**Count 6**

An Eighth Amendment failure to protect claim arises when a plaintiff is incarcerated under conditions posing a substantial risk of serious harm and the defendant acts with deliberate

indifference to the Plaintiff's health or safety. *Farmer*, 511 U.S. at 834, 837 (1994); *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010). In order for Plaintiff to prevail on his failure to protect claims, he must establish that defendants had actual knowledge of an impending harm, easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from each defendant's failure to prevent it. *Santiago*, 599 F.3d at 758.

Plaintiff claims that he made a request to VanPelt to be placed into a single cell, but continued to be celled with inmates who threatened his safety. (*Id.* at pp. 6, 15). Therefore, Count 6 will proceed against VanPelt.

As to the other Defendants, Plaintiff claims that Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. McShan, Dr. Goldman, Dr. Gupta, Dr. Glenn, Dr. Floreani, Dr. Leven, Weatherford, and Pappas have been deliberately indifferent to the substantial risk of harm he faced from himself, prison staff, medical providers, and other inmates. (Doc. 33, pp. 15, 25). He alleges that Defendants were aware that when prisoners are placed into a cell with a mentally ill person, they can become frustrated and dangerous, and that they are aware that leaving mental diseases and ADHD untreated puts Plaintiff at risk of harm from himself and other. (*Id.*). These conclusory and collective accusations, however, fail to allege that Defendants were aware of a specific, impending, and substantial threat to *his* safety prior to his attempted suicide attempts, wrongful cell placement, or inadequate medical treatment. *See Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

Additionally, he does not identify what actions by particular individuals were conducted in violation of his rights, only that "defendants disregard[ed] the risk that plaintiff [would] be harmed" and "the actions of defendants were the direct and proximate cause of the violations". (Doc. 33, pp. 15, 25). Section 1983 creates a cause of action based on personal liability and predicated upon fault. Therefore, "to be liable under § 1983, the individual defendant must have

caused or participated in a constitutional deprivation." *Pepper v. Vill. Of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005)(internal quotations and citations omitted).

Again, as previously mentioned, a defendant cannot be liable merely because he or she supervised a person who caused a constitutional violation. *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Therefore, Count 6 is dismissed against Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. McShan, Dr. Goldman, Dr. Gupta, Dr. Glenn, Dr. Floreani, Dr. Leven, Weatherford, and Pappas.

### Count 7

"Suing a state employee in his official capacity is the same as suing the state…and the state is not a 'person' under § 1983." *Ambrose v. Godinez,* 510 F. App'x 470, 471 (7th Cir. 2013)(citing *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir.2012)); *Williams v. Wisc.*, 336 F.3d 576, 580 (7th Cir.2003); *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)). Additionally, the ruling in *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658 (1978) "applies only to local government units that are not considered part of the state." *Phillips v. Baxter,* 768 F. App'x 555, 560 (7th Cir. 2019)(citing *Will,* 491 U.S. at 70). As such, Jeffreys, Lawrence, Baldwin, and Lashbrook, in their official capacities, cannot be liable under *Monell* for the unconstitutional actions of individual defendants performed pursuant to policies, practice, and customs of IDOC. (Doc. 33, pp. 25-26). Furthermore, to the extent that Plaintiff is requesting injunctive relief "to prevent the continued violation of his constitutional rights", this action only addresses claims of constitutional violations that occurred at Menard. (*Id.* at p. 27). As Plaintiff is now at Dixon, "[a]ny relief that [the] judgment might permit would be purely speculative in nature." *Ortiz,* 561 F.3d at 668 (citations omitted). Therefore, Count 7 is dismissed.

**Count 8**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Farmer,* 511 U.S. at 834-35. "To prevail on a deliberate-indifference claim, the plaintiff must prove that he suffered from '(1) objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Whiting v. Wexford Health Sources, Inc.,* 839 F.3d 658, 622 (7th Cir. 2008)(quoting *Duckworth* v. *Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)); *see also Giles v. Godinez,* 914 F.3d 1040, 1049 (7th Cir. 2019). The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville,* 266 F.3d at 733. When a private corporation has contracted to provide essential government services, such as healthcare for inmates, the corporation can be held liable under Section 1983 if the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Ill. Dep't of Corr.,* 746 F.3d 782, 789 (7th Cir. 2014). Plaintiff's allegations are sufficient for Count 8 to proceed against Dr. Floreani, Weatherford, Dr. Leven, Dr. Glenn, and Wexford Health Sources, Inc. ("Wexford").

Count 8 shall be dismissed, however, as to Dr. McShan, Dr. Goldman, Dr. Gupta, VanPelt, and Pappas for failure to state a claim upon which relief may be granted as Plaintiff has failed to associate sufficient detail regarding failure to treat and deliberate indifference to his serious medical needs with these Defendants. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Twombly,* 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). To state a claim against a defendant, Plaintiff must describe what each named defendant did, or failed to do, that violated Plaintiff's constitutional rights. Regarding these Defendants, Plaintiff only uses conclusory statements that "Defendants," generally, "were involved in and/or oversaw" his

medical treatment. He states that "Defendants' actions described above constitute violations of [his] Eighth Amendment right to be free from cruel and unusual punishment" regarding his medical care but does not describe their actions anywhere in the Complaint. (Doc. 33, pp. 13-14). Because "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)," *Palda v. General Dynamic Corp.*, 47 F.3d 872, 875 (7th Cir. 1995); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971 (7th Cir. 1999), Count 8 is dismissed without prejudice as to Dr. McShan, Dr. Goldman, Dr. Gupta, VanPelt, and Pappas.

### Count 9

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Prisoner complaints about medical issues, including mental health problems such as suicidal ideation, are protected by the First Amendment." *Czapiewski v. Russell,* No. 16-cv-208-BBC, 2016 WL 3920503 *3 (W.D. Wisc., July 18, 2016)(citing *Gomez v. Randle,* 680 F.3d 859, 866-67 (7th Cir. 2012). Plaintiff claims that Dr. Floreani changed his diagnosis and medications in retaliation for attempting to commit suicide following the meeting on September 19, 2018. (Doc. 33, p. 9, 10). It is not entirely clear to the Court what activity or speech Plaintiff is claiming is protected by the First Amendment—his actual attempts to commit suicide or his comments regarding his thoughts of self-harm—so at this stage Count 9 shall proceed against Dr. Floreani.

Plaintiff also asserts that he was classified as a non-SMI in retaliation for complaining about his care. (Doc. 33, pp. 5, 24). This allegation, however, is brought against Defendants Jeffreys and Lawrence, in their official capacities only, and as previously mentioned, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71. *See also Brown v. Budz,* 398 F.3d 904, 917-18 (7th Cir. 2005). Therefore, claims of

retaliation against Jeffreys and Lawrence are dismissed.

## Count 10

As discussed in Count 4, the Constitution does not require a prison grievance procedure, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Prison officials thus incur no liability under Section 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). For these reasons, Plaintiff's allegation that he requested help to file an appeal regarding the responses to his grievances from Mental Health Provider VanPelt and that his requests for help were ignored or denied do not state a claim for a constitutional violation and Count 10 is dismissed. (Doc. 33, p. 13).

## Count 11[2]

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308 (7th Cir. 2017). Plaintiff claims that "individual defendants' conduct described above was extreme and outrageous" (Doc. 33, p. 28), but in the Complaint only describes the conduct of Weatherford, Dr. Floreani, Jane Doe, Dr. Leven, Dr. Glenn, VanPelt, (Doc. 33, pp. 6-10), and Wexford (Doc. 33, p. 27), and

---

[2] Where a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisc. v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). Plaintiff's state law claim of intentional infliction of emotional distress arise out of the same events occurring at Menard that gave rise to his federal claims. As such, the Court will exercise supplemental jurisdiction over this additional state law claim.

offers no other allegations in support of a claim for intentional infliction of emotional distress as to the other Defendants. At this early stage, the Court cannot say that the standard has not been met with respect to Wexford, VanPelt, Weatherford, Dr. Floreani, Jane Doe, Dr. Glenn, and Dr. Leven. Count 11 shall therefore proceed against them.

As to the other Defendants, allegations made collectively against a group of defendants fails to comply with Rule 8, and so, the claim of intentional infliction of emotional distress against Jeffreys, Goldman, Dr. McShan, Lashbrook, Lawrence, Baldwin, Pappas, and Dr. Gupta are insufficient to state an emotional distress claim and are dismissed. *See Brooks,* 578 F.3d at 581; *Ashcroft,* 556 U.S. at 678.

## Count 12

Plaintiff brings an Eighth Amendment claim for failure to provide dental care against "dental staff at Menard." (Doc. 33, p. 29). Dental staff, however, are not listed as defendants in the case caption. Nor do any of the listed defendants appear to be dental staff. The Court will not treat individuals not listed in the caption as defendants, and any claims against them are considered dismissed without prejudice. *See Myles,* 416 F.3d at 551–52. As such, Count 12 is dismissed without prejudice.

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Plaintiff will be allowed to proceed with Counts 1 and 11 against Jane Doe. This defendant must be identified with particularity, however, before service of the Second Amended Complaint can be made on her. Plaintiff will have the opportunity to engage in limited discovery to ascertain her identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the name of this individual is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Second

Amended Complaint. In that vein, the Acting Warden of Menard, Frank Lawrence, will remain a party in this action, in his official capacity only, and shall be responsible for responding to discovery aimed at identifying this unknown defendant and implementing any potential order for injunctive relief. *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011).

**DISPOSITION**

***Severance and Transfer***

**IT IS HEREBY ORDRED** that claims regarding Plaintiff's past or current treatment at Dixon Correctional Center are **SEVERED** into a new case. The new case shall be against **Rob Jeffreys, John Varga, John Baldwin,** and **Dr. Raymond Marquez.**

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) The Second Amended Complaint (Doc. 33);
(2)  Motion for Leave to Proceed in forma pauperis (Doc. 2); and
(3) This Memorandum and Order.

Once the newly severed action is opened, the Clerk of Court is **ORDERED** to transfer the action to the United States District Court for the Northern District of Illinois.

**IT IS FURTHER ORDERED** that the only claim remaining in this action are **COUNTS 1-12** directed against **Wexford, Weatherford, Dr. Floreani, Dr. Goldman, Dr. Leven, Dr. McShan, Jane Doe, Lashbrook, Lawrence, Baldwin, Jeffreys, Pappas, VanPelt, Dr. Glenn, Dr. Gupta, Jim Does,** and **John Does.** The Clerk of Court is **DIRECTED** to terminate **John Varga** and **Dr. Raymond Marquez** as defendants in this action.

***Merits Review***

**IT IS HEREBY ORDERED** that for the reasons stated Defendants **John Does** and **Jim Does** are dismissed without prejudice as Defendants from this action. The Clerk of Court is **DIRECTED** to terminate them from the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that the Complaint survives screening pursuant to Section 1915A. **Count 1** shall proceed against **Jane Doe**. **Count 2** shall proceed against **Dr. Floreani** and **Weatherford. Count 3** shall proceed against **Dr. Leven**, and is **DISMISSED** as to **Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. Goldman, Dr. Floreani, Weatherford, VanPelt,** and **Pappas**. **Count 5** shall proceed against **Jeffreys**, in his official capacity, and is **DISMISSED** as to **Lawrence**. **Count 6** shall proceed against **VanPelt,** and is **DISMISSED** as to **Jeffreys, Lawrence, Baldwin, Lashbrook, Dr. McShan, Dr. Goldman, Dr. Gupta, Dr. Glenn, Dr. Floreani, Dr. Leven, Weatherford,** and **Pappas**. **Count 8** shall proceed against **Dr. Floreani, Weatherford, Dr. Leven, Dr. Glenn,** and **Wexford,** and is **DISMISSED** as to **Dr. McShan, Dr. Goldman, Dr. Gupta, VanPelt,** and **Pappas. Count 9** shall proceed against **Dr. Floreani**. **Count 11** shall proceed against **Wexford, Weatherford, Dr. Floreani, Jane Doe, Dr. Glenn, Dr. Leven,** and **VanPelt,** and is **DISMISSED** as to **Dr. Goldman, Dr. McShan, Lashbrook, Lawrence, Baldwin, Jeffreys, Pappas,** and **Dr. Gupta.**

**IT IS FURTHER ORDERED** that **Counts 4, 7, 10,** and **12** are **DISMISSED** without prejudice. Because there are no other claims against them, **Dr. Goldman, Dr. McShan, Lashbrook, Baldwin, Pappas,** and **Dr. Gupta** are **DISMISSED** from this action without prejudice. The Clerk of Court is **DIRECTED** to terminate these individuals from the CM/ECF system. **Lawrence** shall remain as a Defendant in his official capacity only, as Warden of Menard Correctional Center.

**IT IS FURTHER ORDERED** the Clerk of Court shall prepare for **Dr. Floreani, Weatherford, Dr. Leven, Wexford, VanPelt, Jeffreys, Dr. Glenn,** and **Lawrence** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms,

a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendant, **Jane Doe**, until such time as Plaintiff has identified her by name in a properly filed motion for substitution. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With the exception of **Lawrence,** Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

**Lawrence** is **ORDERED** to timely enter his appearance. **Lawrence,** however, does not need to file an Answer or other responsive pleading. Once **Lawrence** enters his appearance, the Court will enter a discovery order setting guidelines for identifying the unknown defendant.

**Lawrence** will be responsible for responding to discovery requests aimed at identifying the unknown defendant propounded in accord with this discovery order.

This entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS ALSO ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 15, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**