**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**SOUTHERN DISTRICT (EAST ST. LOUIS)**

| | | |
|---|---|---|
| OMARRIAN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:19-CV-00386-SPM |
| v. | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| JACOB WEATHERFORD, DR. | ) | |
| CHRISTINA FLOREANI, DR. LISA | ) | |
| GOLDMAN, DR. EVA LEVEN, DR. | ) | |
| MYRON McSHAN, LEE GREGSON, JOHN | ) | |
| VARGA, JACQUELINE LASHBROOK, | ) | |
| FRANK LAWRENCE, JOHN BALDWIN, | ) | |
| ROB JEFFREYS, MELISSA PAPPAS, | ) | |
| MEGAN VANPELT, DR. ROBERT | ) | |
| GLENN, DR. RAJENDRA GUPTA, DR. | ) | |
| RAYMOND MARQUEZ, JIM DOES, AND | ) | |
| JOHN DOES, | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

Plaintiff Omarrian Jones, by and through his attorneys, SWMW Law, LLC, brings this Complaint against above-named Defendants and alleges as follows:

## INTRODUCTION

1.    Omarrian Jones (hereinafter referred to as plaintiff and by his preferred name, I.M.) brings this civil action pursuant to 42 U.S.C. § 1983 to redress violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as claims under the American with Disabilities Act and under state law.

2.    Defendants intentional and/or reckless denial of timely medical care and deliberate indifference to I.M.'s serious medical needs, failure to protect him from himself and others,

denying him due process via a grievance procedure and subjecting him to inhumane conditions in crisis cells, as set forth below, violated I.M.'s Eighth Amendment rights and left Plaintiff with serious, lasting injuries.

3.      Additionally, based on defendants' outrageous actions, plaintiff is entitled to compensatory and punitive damages and, pursuant to 42 U.S.C. § 1988, to costs and attorneys fee reasonable incurred in the prosecution of this lawsuit.

4.      Plaintiff's claims are brought against the Director of the IDOC and the Wardens of Menard and Dixon in their official capacities, unless otherwise noted. All other defendants are sued in both their official and individual capacities.

## JURISDICTION AND VENUE

5.      This case arises under 42 U.S.C. § 1983.  This Court has subject matter jurisdiction over I.M.'s federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.

6.      Venue is proper in the Southern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this Complaint occurred in Randolph County, Illinois.

## PARTIES

7.      Plaintiff is currently incarcerated in the Illinois Department of Corrections (IDOC) Dixon Correctional Center ("Dixon") in Dixon, IL.

8.      Defendant Wexford Health Sources, Inc. ("Wexford") is an independent contractor that provides medical care to the inmates in Menard and served in such capacity at all times relevant to this Complaint.

9.     Defendant Jacob Weatherford, is employed by Wexford Health Sources, Inc., as a Mental Health Professional ("MHP") for Menard and served in such capacity at all relevant times to this Complaint.

10.     Defendant Dr. Christina Floreani is/was employed by Wexford Health Sources, Inc., as a psychiatrist for Menard and served in such capacity at all relevant times to this Complaint.

11.     Defendant Dr. Lisa Goldman, M.D., was/is employed by Wexford Health Sources, Inc., as the lead psychiatrist and/or director of psych care, and served in such capacity at all times relevant to this Complaint.

12.     Defendant Dr. Eva Leven, a licensed clinical psychologist, is employed by Wexford Health Sources, Inc., as the Mental Health Services Director at Menard and served in such capacity at all relevant times to this Complaint.

13.     Defendant Dr. Myron McShan, was/is employed by Wexford Health Sources, Inc., as a psychology doctor and served in such capacity at all relevant times to this Complaint.

14.     Defendant Lee Gregson was/is employed by the IDOC and/or Wexford Health Sources, Inc., as a nurse at Menard on or about August, 30, 2018 and served in such capacity at all relevant times to this Complaint.

15.     Defendant John Varga is the Warden of Dixon Correctional Center.  At all relevant times he was employed by IDOC. At all times relevant to the events at issue in this case, defendant Varga promulgated rules, regulations, policies, and procedures at Dixon.  Defendant Varga is responsible for supervising all staff and managing all operations at Dixon.

16.     Defendant Jacqueline Lashbrook was employed by the Illinois Department of Corrections ("IDOC") as Warden for Menard. Defendant Frank Lawrence is the current acting Warden of Menard Correctional Center.  At all relevant times Lashbrook and/or Lawrence were

employed by IDOC. At all times relevant to the events at issue in this case, Lashbrook and/or Lawrence promulgated rules, regulations, policies, and procedures at Menard and were responsible for supervising all staff and managing all operations at Menard.

17.     Defendant John Baldwin was the Director of IDOC.  Defendant Rob Jeffreys is the current acting Director of IDOC.  At all times relevant to the events at issue in this case, defendants Jeffreys and/or Baldwin maintained administrative and supervisory authority over the operations of all prisons in Illinois, including Menard and Dixon.  At all relevant times, defendants Jeffreys and/or Baldwin promulgated rules, regulations, policies and procedures of the IDOC.

18.     Defendant Melissa Pappas is/was employed by Wexford Health Sources, Inc., and/or IDOC as a Mental Health Professional (MHP) for Menard and served in such capacity at all relevant times to this Complaint.

19.     Defendant Megan VanPelt is/was employed by Wexford Health Sources, Inc., and/or IDOC as a Mental Health Professional for Menard and served in such capacity at all relevant times to this Complaint.

20.     Defendant Dr. Robert Glenn is/was employed by Wexford Health Sources, Inc., as a psychiatrist for Menard and served in such capacity at all relevant times to this Complaint.

21.     Defendant Dr. Rajendra Gupta, is/was employed by Wexford Health Sources, Inc., as a psychiatrist for Menard and served in such capacity at all relevant times to this Complaint.

22.     Defendant Dr. Raymond Marquez, is/was employed by Wexford Health Sources, Inc., as a psychiatrist for Dixon and served in such capacity at all relevant times to this Complaint.

23.     Defendant Jacqueline Lashbrook was employed by the Illinois Department of Corrections ("IDOC") as Warden for Menard and served in such capacity at all relevant times to this Complaint.

24.     Defendants Jim Does were employed by the IDOC as corrections officers in the North II, Gallery 5 crisis of Menard from on or about Aug 31, 2018, to Sept 5, 2018, and September 14, 2018 to October 25, 2018, and served in such capacity at all relevant times to this Complaint. In addition, defendants John Does were employed by the IDOC as the prison staff and corrections officers in the North 1, Gallery 3 of Menard, including a Lieutenant, Sergeant and gallery officers, on August 30, 2018, and served in such capacity at all relevant times to this Complaint.

25.     At all times alleged in this Complaint, Defendants were acting in the scope of their employment and under the color of state law and I.M. was in IDOC's custody.

## FACTS

26.     I.M. has been incarcerated and in IDOC custody since 2012 and had previously been held at Menard, and currently held at Dixon, with Inmate Number M29668.

27.     Plaintiff has previously been diagnosed with mental illnesses, ADHD, depression and suicidal tendencies.

28.     While in IDOC custody, I.M. was previously classified as Seriously Mentally Ill ("SMI").  This designation was later removed to retaliate against plaintiff for complaining about his care and to deny plaintiff proper medical treatment.

29.     From 2012 until the present, I.M. has been denied correct and consistent medication and treatment for his mental illnesses, depression and ADHD.  As a result of not being properly medicated for his mental health, depression and ADHD, his conditions continue to deteriorate, including the fact that I.M. became severely clinically and chronically depressed and he began expressing suicidal ideology.  Indeed, in June 2018, I.M. became depressed and suicidal and on August 30, 2018 acted upon his suicidal intentions for the first time.

30.     I.M. has continually been placed in cells with other inmates who are unprepared and ill-equipped to deal with an untreated mental or disabled person such as I.M., which predictably has led to altercations and violence with the cellmates.  In one instance, I.M. shoulder was injured from an altercation with a cellmate as a result of this.  I.M. has requested to be put into a single men's cell, including at least once to MHP VanPelt.

31.     On August 30, 2018, I.M. asked the gallery officers and prison staff (defendants John Does) of North One 3-gallery, including the Sergeant and the Lieutenant to place him on crisis watch.  These officers and staff were aware of plaintiff's cries for help and his threats of suicide as same were relayed to them by I.M. and by I.M.'s cellmate.  It was then reported to I.M. that these 3 gallery officers and staff (defendants John Does), including the Sergeant and the Lieutenant, had decided to leave I.M. in his general population non crisis cell.  Thereafter, I.M. attempted suicide in this general population cell.  I.M.'s cellmate took a rope away from I.M. after I.M. attempted suicide with it, and the cellmate gave it to the evening nurse (Lee Gregson) on duty.  However, even after the nurse Lee Gregson was given the rope, and Lee Gregson said she would get help, no care or intervention was given to I.M. by Lee Gregson or John Does.  Later that day, I.M. again attempted suicide by hanging himself in his cell.  This was one of many attempts by I.M. to commit suicide or attempt self-harm that day.  It was not until around two in the morning that a new nurse on duty finally placed I.M. in a crisis cell, by which time I.M. had already attempted suicide multiple times.

32.     As a result, I.M. has lasting neck and upper body injuries including muscle spasms in the neck and upper back.

33.     I.M. was placed in crisis cells for suicidal thoughts from August 31, 2018 until October 26, 2018 for being suicidal.  He was in the Menard facility's North II crisis cells, first in

cell 509, from August 31, 2018, until approximately September 5.  He was moved to Menard Central Clinic crisis cells from approximately September 5, 2018 to September 14, 2018 and back in the North II crisis cells, cell 503, on September 14, 2018 until October 26, 2018.

34.     The conditions of I.M.'s North II crisis cells (cells 509 and 503) included urine, blood and feces on the walls, un-swept floors and mattresses; human waste stained toilets; poorly functioning sinks and toilets, including only the hot water working in cell 509 and only the cold water working in cell 503.  The light in cell 509 blazed brightly at all times and was never turned off and was not dimmed during sleeping hours.  Moreover, cell 509's extremely high heat and humidity with its extremely low air flow made for beyond harsh and inhumane living conditions which caused I.M. to experience severe headaches, difficultly sleeping, vertigo, dizziness, nausea, heat exhaustion, dehydration, sleep deprivation, nutrient depletion and ultimately even hallucinations. These conditions caused IM, who is asthmatic, to have trouble breathing.

35.     After experiencing days of extreme high heat and humidity, coupled with extremely low air flow and substandard living conditions, I.M.'s neighbor in the adjacent cell (cell 508) died.  On the next day, I.M.'s neighbor two cells down (in cell 507) also died from these conditions.  In total, 3 inmates died within a span of just three days, from the conditions of the crisis cells at Menard.  I.M. and other inmates were subject to conditions far beyond harsh for any inmate, let alone one suffering from a crisis.

36.     Sanitation in the crisis cells at Menard was severely lacking.  Not only do the substandard conditions present serious health hazards, they are an insult to basic human dignity.

37.     As a result of the deplorable conditions of the crisis cells I.M. suffered lasting physical harm, emotional trauma and mental anguish, including as described herein.

38.     On September 19, 2018, I.M. was still on crisis watch and taken to a meeting with Dr. Floreani and MHP Weatherford.  The meeting was highly contentious and I.M. argued with Weatherford.  During said meeting, I.M. repeatedly told Dr. Floreani and Weatherford that he was suicidal but Dr. Floreani and Weatherford refused to provide treatment and did not take action to protect I.M.  Instead Dr. Floreani told I.M. he would have to be responsible for his actions.  I.M. clearly, repeatedly, and unequivocally told both Dr. Floreani and Weatherford that his intention upon being released from crisis watch was to commit suicide in general population via hanging. Neither Dr. Floreani or Weatherford took any action to help I.M.  Instead, Dr. Floreani and Weatherford's response was to inform I.M. that they did not believe in his suicidality and promptly ordered I.M. be released from crisis watch and returned to general population.

39.     Shortly after I.M. saw Dr. Floreani and Weatherford and was provided no help, he was returned to his cell 503 of North 2 on September 19, 2018, where he was, by Dr. Floreani and Weatherford's instruction, taken off crisis watch classification and protection and reclassified for general population.  At this time, I.M. was given back his property.  Once I.M. had his property back and after the crisis officer left the gallery, I.M. fashioned a noose out of articles of his property, including shoelaces, and I.M. again attempted suicide by hanging himself, to the point of losing consciousness.

40.     As a result of the deliberate mis-diagnosis and deliberate lack of treatment by Dr. Floreani and Weatherford on September 19, I.M. attempted suicide and has lasting neck and upper body injuries including muscle spasms in the neck and upper back.

41.     After attempting suicide multiple times, I.M. was forced to take medication(s) (believed to be Haldol) without any explanation from a doctor what conditions and/or symptoms the medications treated.  In addition, to cover-up the incidence of September 19, 2018, Dr. Floreani

subsequently changed I.M.'s diagnosis and medications, including administration of Haldol without explaining Haldol and its side effects to I.M.  This retaliatory change in diagnosis and change in medications has caused further delay and mistreatment of I.M.'s mental illnesses.

42.    Dr. Leven was aware of the beyond harsh and inhumane conditions in the crisis cells and I.M. complained to Leven about the conditions as early as September 3, 2018, the day before I.M.'s first neighbor died.  Dr. Leven said she would return to speak to him but she never returned.  I.M. also informed Dr. Leven about his lack of medical treatment and about his needs, but Leven took no action.

43.    Due to I.M.'s continuing neck and back pain from his suicide attempts, Dr. Caldwell notified I.M. that physical therapy appointments would be arranged for him, yet, to this date I.M. has not received any physical therapy care.

44.    Defendants had knowledge that I.M. faced a substantial risk and that I.M. may commit suicide. Defendants continually discredited that risk by allowing I.M. to remain in a cell unsupervised where I.M. had access to a rope and shoelaces and/or otherwise failed to take reasonable measures to prevent I.M. from attempting suicide, multiple times, by hanging himself in his cell.

45.    Defendants intentionally disregarded the substantial risk that I.M. would commit suicide by hanging.

46.    As a result of the Defendants' deliberate indifference to the substantial risk that I.M. may commit suicide, I.M. suffered serious physical and mental injuries, including continued depression and sever neck and upper back muscle spasms and pain and general lower quality of life.

47.     I.M. has been previously diagnosed with and continues to suffer from depression and  Attention Deficit/Hyperactivity Disorder, or ADHD.

48.     I.M. has received no first-line medication to treat his mental health conditions, and has repeatedly requested and been denied a prescription for Adderall to help treat his ADHD symptoms.  In the wake of the September 19, 2018 incidents, I.M. was retaliatorily taken off of Wellbutrin by Dr. Floreani without his knowledge.  His diagnosis and medications were also changed by Dr. Floreani in retaliation to I.M.'s September 19 hanging and/or to cover-up Dr. Floreani's deliberate mis-diagnosis and lack of treatment on September 19.  Ever since, all subsequent requests for I.M. to be re-instated on Wellbutrin, including a request by Dr. Glenn, have been denied.

49.     I.M. was seen by psychiatrists, psychologists, and mental health professionals employed by Wexford regarding his ADHD symptoms and care as well as his suicidal thoughts and actions. The medical and mental health staff at the Menard facility (and now at Dixon) failed to properly assess the impact of I.M.'s diagnosis, lack of medications, cell conditions, and other suicide stressors including his physical problems such failing teeth, ringing hear, neuropathy of the feet, prolonged chest pains, allergies, asthma, and IBS.  This has resulted in I.M. being mis-diagnosed, mis-treated, under-treated and/or un-treated for his conditions.

50.     The failure to treat I.M. for his ADHD, depression, physical conditions and mental health continues at the Dixon facility, as does the mis-treatment and mis-diagnosis of same.

51.     As such, defendants recklessly, intentionally, or with deliberate indifference to I.M.'s health and safety caused or contributed to cause the prolonged delay in the proper treatment or recommendations for treatment of I.M.'s serious mental health needs, the failure of which led to I.M.'s injuries from attempting suicide multiple times.

52.     Defendants actually knew of a substantial risk of I.M. attempting suicide because his mental health needs remained untreated and Defendants consciously disregarded these risks by failing to take reasonable and timely measures to diagnose, treat, and/or recommend a course of treatment for I.M.

53.     Defendants' intentional and/or reckless actions through their denial of timely medical care and deliberate indifference to I.M.'s serious medical and mental health needs, violated I.M.'s Eighth Amendment rights and left I.M. with serious and continuing mental and physical injuries.

## EXHAUSTION OF REMEDIES

54.     Around September 7, 2018, to September 13, 2018, I.M. wrote a grievance regarding the conditions of his North 2 crisis cell 509 confinement and the treatment and medication he was being given and not being given.  This grievance was properly submitted by IM and said grievance was never addressed, or replied to by any official or staff at Menard.

55.     Around September 20, 2018, to September 25, 2018, I.M. wrote a grievance regarding the incidents of September 19, 2018, including his treatment (or lack thereof) by Dr. Floreani and Weatherford and him being wrongly released from crisis watch on September 19, 2018, and subsequently attempting suicide immediately after being released.  This grievance was properly submitted by IM and said grievance was never addressed, or replied to by any official or staff at Menard.

56.     Between September and October 2018, I.M. wrote and properly submitted a grievance where he set out that the denial of basic medical and psychological care led to his depression's regression into suicidality.  He requested better dental services to address his teeth, better IBS treatment to address his stomach pains, treatment for his neuropathy, and treatment for

his ADHD and depression.  This grievance was properly submitted by IM and said grievance was never addressed, or replied to by any official or staff at Menard.

57.     Between September and October 2018, I.M. wrote and properly submitted an emergency grievance regarding these and similar issues including I.M. being forced to take medication (Haldol) by Dr. Floreani that caused him to blackout.  I.M. wrote, or had a staff member write for him, two additional grievances during this time period.  These grievances subsequently vanished and were never received by the Administrative Review Board, addressed, or replied to by any official or staff at Menard. One of the grievances that I.M. submitted during this time frame was a grievance regarding MHP Pappas and her dealings with IM while he was in a crisis cell from August to October 2018.

58.     On October 6, 2018, I.M. filed an original copy of a grievance with the Menard facility, as well as sending a copy to Administrative Review Board on November 7, 2018. Administrative Review Board then returned the copy of the grievance to I.M. stating that they would need the original, however, when I.M. inquired about his original, Menard informed him they did not have it.  This grievance was never addressed or replied to by any official or staff at Menard.

59.     On October 8, 2018, I.M. filed a grievance once again regarding the forced medication and living conditions in the crisis cell.  The Administrative Review Board responded that his grievance had been sent to the incorrect location, which I.M. tried to remedy, but subsequently his grievance was untimely.

60.     On October 13, 2018, I.M. filed a grievance. This grievance was later returned to him and was never addressed, or replied to by any official or staff at Menard.

61.     At least two times in October 2018, IM had officers fill out grievances for him. Those grievance were never addressed or replied to by any official or staff at Menard.

62.     In addition, plaintiff's location in the crisis cell and his mental illnesses, ADHD and depression impaired his ability to file grievances and appeals, and the correctional facility did not take reasonable steps to remedy this or to ensure the grievance procedure was available to him.

63.     If and when IM did get a response regarding any of his grievances, he requested help to file an appeal from the ADA Coordinator and from MHP VanPelt. His requests for help were ignored or denied.

64.     I.M. has exhausted his administrative remedies with respect to all claims and all Defendants.

## COUNT I --Failure to Treat (Mental Illness and ADHD)
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

65.     Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

66.     This Count is alleged against Dr. Marquez, Dr. McShan, Dr. Goldman, Dr. Gupta, Dr. Glenn, Dr. Floreani, Dr. Leven, MHP Weatherford, MHP VanPelt and MHP Pappas, who have all treated or coordinated medical treatment for plaintiff while he was a Menard and/or Dixon. Additionally, plaintiff seeks injunctive and declaratory relief against defendants Director Jeffreys and Dixon Warden Varga in their official capacities to prevent the continued violation of his constitutional rights.

67.     Defendants were involved in and/or oversaw I.M.'s medical treatment during his time at Menard and/or Dixon.  Defendants also met with I.M. and monitored his condition.

68.     Defendants' actions described above constitute violations of I.M.'s Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' intentional and/or reckless actions through their denial of timely medical care and deliberate indifference to I.M.'s serious medical and mental health needs violated I.M.'s Eighth Amendment rights and left I.M. with serious, continued neck and back pain and ongoing untreated mental illness, depression and suicidal ideology, thereby causing I.M. to suffer physical and emotional pain.

69.     In addition, by failing to treat plaintiff for his medical conditions have exacerbated his serious mental health problems, leading him to suicide attempts.

70.     Defendants' action described herein demonstrate deliberate or reckless indifference to a known risk to I.M.'s health, safety, and wellbeing in violation of I.M.'s Eighth Amendment rights.

71.     The actions of Defendants in failing to either treat or recommend a course of treatment in a timely or reasonable fashion were intentional or done with reckless disregard or deliberate indifference to I.M.'s seriously medical need and exacerbated I.M.'s injuries. Defendants conduct as described herein violated the Eighth Amendment's prohibition against cruel and unusual punishment and continues to do so.

72.     The actions of Defendants, including failing to timely facilitate or properly supervise the scheduling of I.M.'s treatment and failure to refer him to outside specialists, was intentional or done with reckless disregard or deliberate indifferent to I.M.'s serious medical and mental health needs and caused I.M. to needlessly suffer physical and emotional pain as well and continuing injuries.  Defendants' conduct as described herein violated the Eighth Amendment's prohibition against cruel and unusual punishment and continues to do so.

## COUNT II--Failure to Protect (Mental Illness and ADHD)
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

73.     Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

74.     This Count is alleged against the same defendants identified in Count I.

75.     Defendants are liable for I.M.'s injuries because he/she permitted I.M. to go untreated for his mental illnesses, chronic depression and ADHD, despite the fact that defendants were aware that I.M. was experiencing mental illness and chronic depression, untreated symptoms and a lack of regard for his own life.  Defendants were deliberately indifferent to the substantial risk that I.M. would attempt to commit suicide and/or that he would be harmed by others.

76.     The defendants have been and continue to be deliberately indifferent to the substantial risk of harm plaintiff faces from himself, from prison staff, from the medical providers at Wexford and from other inmates, all as a result of him being mentally ill in a prison and untreated for same.

77.     Defendants are aware that other prisoners when placed into a cell with a mentally ill person such as plaintiff, or a person with ADHD such as plaintiff, can become frustrated and dangerous.  Defendants are also aware that leaving mental diseases and ADHD untreated puts plaintiff at risk of harm from himself and others, including his cellmates.  Yet defendants disregard the risk that plaintiff will be harmed by himself or others, including harm by the staff at Wexford, in violation of plaintiff's Eighth Amendment rights.

78.     The actions of defendants were the direct and proximate cause of the violations of plaintiff's constitutional rights and of the damages suffered by plaintiff, including bodily injury, pain, suffering, emotional distress, anguish and humiliation.

79.     Indeed, there was a strong likelihood that plaintiff would be seriously harmed, defendants were aware of same and defendants failed to take reasonable measures to prevent the harm.  The harm would have not occurred had defendants taken reasonable measures.

80.     Defendants' actions described above constitute violations of I.M.'s Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' intentional and/or reckless actions through their denial of timely medical care, denial of getting him to a crisis cell and deliberate indifference to I.M.'s serious medical and mental health needs violated I.M.'s Eighth Amendment rights and left I.M. with serious, continued neck and back pain and ongoing untreated mental illness, depression and suicidal ideology,, thereby causing I.M. to suffer physical and emotional pain.

## COUNT III--Failure to Treat (8/30/18)
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

81.     Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

82.     This Count is alleged against John Does, including Gallery Officer John Doe, Lieutenant John Doe, Sergeant John Doe and Nurse Lee Gregson, all of whom were on duty on August 30, 2018.

83.     Defendants are liable for I.M.'s injuries because he/she permitted I.M. to remain in his cell on August 30, 2018, did not get I.M. to proper medical treatment and allowed him to be in his cell without proper oversight, despite the fact that defendants were aware that I.M. was experiencing a lack of regard for his own life.  Defendants were deliberately indifferent to the substantial risk that I.M. would attempt to commit suicide.

84.    Indeed, there was a strong likelihood that plaintiff would be seriously harmed, defendants were aware of same and defendants failed to take reasonable measures to prevent the harm.  The harm would have not occurred had defendants taken reasonable measures.

85.    Defendants' actions described above constitute violations of I.M.'s Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' intentional and/or reckless actions through their denial of timely medical care, denial of getting him to a crisis cell and deliberate indifference to I.M.'s serious medical and mental health needs violated I.M.'s Eighth Amendment rights and left I.M. with serious, continued neck and back pain and ongoing untreated mental illness, depression and suicidal ideology, thereby causing I.M. to suffer physical and emotional pain.

86.    Additionally, plaintiff seeks injunctive and declaratory relief against defendants Director Jeffreys and Dixon Warden Varga in their official capacities to prevent the continued violation of his constitutional rights.

## COUNT IV--Failure to Protect (8/30/18)
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

87.    Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

88.    This Count is alleged against the same defendants identified in Count III. Additionally, plaintiff seeks injunctive and declaratory relief against defendants Director Jeffreys and Dixon Warden Varga in their official capacities to prevent the continued violation of his constitutional rights.

89.    Defendants are liable for I.M.'s injuries because he/she permitted I.M. to remain in his cell, and be left in his cell without proper oversight, despite the fact that defendants were aware

that I.M. was experiencing a lack of regard for his own life.  Defendants were deliberately indifferent to the substantial risk that I.M. would attempt to commit suicide.

90.     Indeed, there was a strong likelihood that plaintiff would be seriously harmed, defendants were aware of same and defendants failed to take reasonable measures to prevent the harm.  The harm would have not occurred had defendants taken reasonable measures.

91.     Defendants' actions described above constitute violations of I.M.'s Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' intentional and/or reckless actions through their denial of timely medical care, denial of getting him to a crisis cell and deliberate indifference to I.M.'s serious medical and mental health needs violated I.M.'s Eighth Amendment rights and left I.M. with serious, continued neck and back pain and ongoing untreated mental illness, depression and suicidal ideology,, thereby causing I.M. to suffer physical and emotional pain.

## COUNT V--Failure to Treat (9/19/18)
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

92.     Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

93.     This count is alleged against Dr. Floreani and MHP Weatherford.

94.     On August 30, 2018 (the day I.M. first attempted suicide) I.M. clearly, repeatedly, and unequivocally expressed his concerns and his specific plans for suicide.  On September 19, 2018, I.M. clearly, repeatedly, and unequivocally expressed his suicidal concerns with Dr. Floreani and Weatherford and his specific plans to attempt suicide by hanging if he were released from crisis watch to general population.  Directly after the September 19 meeting with Dr. Floreani and

Weatherford, IM attempted suicide.  Despite these numerous warning signs, Defendants made no attempts to further supervise or treat I.M.

95.     Dr. Floreani and MHP Weatherford's treatment, or lack thereof, on September 19, 2018; and prior thereto, and their failure to require plaintiff to be in a protected cell on suicide watch, and failure to provide plaintiff with the medical care he needed for his suicidal ideology was deliberate indifference.

96.     Defendants are liable for I.M.'s injuries, because Defendants were deliberately indifferent to the substantial risk that I.M. would commit suicide, and Defendants intentionally disregarded that risk by failing to implement a course of treatment and care to mitigate the risk that I.M. would attempt suicide.

97.     Indeed, there was a strong likelihood that plaintiff would be seriously harmed, defendants were aware of same and defendants failed to take reasonable measures to prevent the harm.  The harm would have not occurred had defendants taken reasonable measures.

98.     Defendants' actions described above constitute violations of I.M.'s Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' intentional and/or reckless actions through their denial of timely medical care, denial of getting him to a proper cell and deliberate indifference to I.M.'s serious medical and mental health needs violated I.M.'s Eighth Amendment rights and left I.M. with serious, continued neck and back pain and ongoing untreated mental illness, depression and suicidal ideology, flashbacks and nightmares, thereby causing I.M. to suffer physical and emotional pain.

## COUNT VI--Failure to Protect (9/19/18)
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

99.     Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

100.    This count is alleged against Dr. Floreani and MHP Weatherford.

101.    Defendants are liable for I.M.'s injuries because he/she released I.M.'s crisis watch, returned his property and ordered him back to general population, all without proper oversight, despite the fact that defendants were aware that I.M. was experiencing a lack of regard for his own life.  Defendants were deliberately indifferent to the substantial risk that I.M. would attempt to commit suicide.

102.    Indeed, there was a strong likelihood that plaintiff would be seriously harmed, defendants were aware of same and defendants failed to take reasonable measures to prevent the harm.  The harm would have not occurred had defendants taken reasonable measures.

103.    Defendants' actions described above constitute violations of I.M.'s Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' intentional and/or reckless actions through their denial of timely medical care, denial of getting him to a crisis cell and deliberate indifference to I.M.'s serious medical and mental health needs violated I.M.'s Eighth Amendment rights and left I.M. with serious, continued neck and back pain and ongoing untreated mental illness, depression and suicidal ideology, flashbacks and nightmares, thereby causing I.M. to suffer physical and emotional pain.

## COUNT VII— Crisis Cell Conditions as Cruel and Unusual Punishment
**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

104.    Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

105.    This Count is brought against defendant Director Jeffreys and Menard Warden Lawrence in their official and individual capacities and former Director John Baldwin and former Menard Warden Lashbrook in their individual capacities.  This Count is also brought against Dr. Leven, Dr. Goldman Dr. Floreani, MHP Weatherford, MHP VanPelt, MHP Pappas and Jim Does as they were aware of the conditions and still placed and allowed plaintiff to remain in the beyond harsh and subhuman conditions of these cells.

106.    Defendants, by and through its agents, servants, and employees, maintains interrelated policies, practices, and customs that cause harsh and beyond subhuman living conditions in the crisis cells as described above.

107.    Defendants were previously on notice before and during plaintiff's confinement in the crisis cells that the facilities, and particularly these cells were grossly inadequate, harsh, cruel and subhuman.  Defendants were further on notice from previous cases filed regarding these crisis cells and grievances and complaints made by other prisoners.

108.    Defendants maintained and implemented these interrelated policies, practices, and customs with deliberate indifference to I.M.'s needs and Eighth Amendment rights.

109.    The conditions in the crisis cells as described above subjected plaintiff to a strong likelihood of serious harm and defendant was aware of this strong likelihood yet kept plaintiff in these conditions anyway.

110.    As a direct and proximate cause of these policies, practices, and customs, I.M. suffered lasting mental and physical injuries.

111.    Defendant failed to take reasonable measures to prevent this harm and plaintiff would not have suffered this harm if defendant had taken reasonable measure.

112.    The above acts of defendants and their agents and the complete failure to address the conditions of these crisis cells for I.M. and others, including their failure to address the filth, deadly heat and conditions in the crisis cell unit, and the keeping of plaintiff in said conditions, constituted cruel and unusual punishment, violative of the Eighth Amendment to the U.S. Constitution.

## COUNT VIII--Interference with Grievance Process
**(1st, 8th, and 14th Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

113.    Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

114.    This Count is brought against defendant Director Jeffreys and Menard Warden Lawrence in their official capacities and former Director John Baldwin and former Menard Warden Lashbrook in their individual capacities, as well as Dixon Warden Varga in his official capacity.

115.    Defendants, by and through its agents, servants, and employees, maintains interrelated policies, practices, and customs that allow the grievances of inmates to be thrown away, disregarded or otherwise lost.

116.    Defendants were previously on notice before and during plaintiff's lost grievances that such regularly occurs at Menard and Dixon.

117.    Defendants maintained and implemented these interrelated policies, practices, and customs with deliberate indifference to I.M.'s needs, 1st Amendment, Fourteenth Amendment and Eighth Amendment rights.

118.    The inadequate grievance process above subjected plaintiff to a strong likelihood that plaintiff's grievances would be lost and that his failure to obtain due process would seriously harm and defendant was aware of this strong likelihood.

119.    As a direct and proximate cause of these policies, practices, and customs, I.M.'s grievances went unaddressed, thereby causing him to suffer lasting mental and physical injuries.

120.    Defendant failed to take reasonable measures to prevent this harm and plaintiff would not have suffered this harm if defendant had taken reasonable measure.

121.    The above acts of defendants and their agents and the complete failure to address the inadequate grievance process for I.M. and others, constituted cruel and unusual punishment, violative of the Eighth Amendment to the U.S. Constitution.

122.    Defendants by and through its agents, servants, and employees continuously and systematically disregarded, or threw out, I.M.'s grievances.  Defendants' conduct was undertaken intentionally, with malice and reckless indifference to I.M.'s due process rights and to his First Amendment rights to redress of grievances.

## COUNT IX—American's With Disabilities Act ("ADA") and Rehabilitation Act ("RA")
(ADA and RA Claims for Declaratory and Injunctive Relief)

123.    Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

124.    This Count is brought against defendant Director Jeffreys, Menard Warden Lawrence and Dixon Warden Varga in their official capacities.

125.    As described more fully in the proceeding paragraphs, plaintiff is a qualified person with mental disability under the ADA and RA and his disability is known to defendants.  IDOC staff has even previously and presently diagnosed him as SMI.

126.    Defendants violated the ADA and RA by discriminating against plaintiff on the basis of his disability, as described more fully above.

127.    Defendants violated the ADA and RA by failing to provide plaintiff with reasonable accommodations for his mental disability.  Defendants also violated the ADA and RA by the retaliatory decision to classify him as non-SMI for a short while following his September 19, 2018 attempted suicide. Defendants have denied plaintiff the reasonable accommodation, including but not limited to the accommodation of a safe environment, proper medication, proper medical care and assistance to file proper grievances and appeals.

128.    Plaintiff seeks injunctive and declaratory relief against Director Jeffreys and Dixon Warden Varga in their official capacities to prevent the continued violation of his rights under the ADA.

## Count X—Failure to Protect
(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief Under 42 U.S.C. § 1983)

129.    Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

130.    This Count is brought against defendant Director Jeffreys, Menard Warden Lawrence and Dixon Warden Varga, as well as former Director John Baldwin and former Menard Warden Lashbrook, all in their individual and official capacities.

131.    Under settled U.S. Supreme Court authority, and in accordance with the Eighth Amendment, plaintiff is entitled to be free from a known and substantial risk of serious harm while in the custody of the State.

132.    The defendants have been and continue to be deliberately indifferent to the substantial risk of harm plaintiff faces from himself, from prison staff, from the medical providers

at Wexford and from other inmates, all as a result of him being mentally ill in a prison and untreated for same.

133.    Defendants are aware that other prisoners when placed into a cell with a mentally ill person such as plaintiff, or a person with ADHD such as plaintiff, can become frustrated and dangerous.  Defendants are also aware that leaving mental diseases and ADHD untreated puts plaintiff at risk of harm from himself and others, including his cellmates.  Yet defendants disregard the risk that plaintiff will be harmed by himself or others, including harm by the staff at Wexford, in violation of plaintiff's Eighth Amendment rights.

134.    The actions of defendants were the direct and proximate cause of the violations of plaintiff's constitutional rights and of the damages suffered by plaintiff, including bodily injury, pain, suffering, emotional distress, anguish and humiliation.

135.    Additionally, plaintiff seeks injunctive and declaratory relief against these defendants in their official capacities to prevented the continued violation of his constitutional rights.

## COUNT XI – Unlawful Policy and Practice
(Monell Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983)

136.    Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

137.    This Count is brought against defendant Director Jeffreys, Menard Warden Lawrence and Dixon Warden Varga, as well as former Director John Baldwin and former Menard Warden Lashbrook, all in their official capacities.

138.     The actions of the individual defendants were undertaken pursuant to policies, practices, and customs of the IDOC, described above and below, which were ratified by policymakers for the IDOC with final policymaking authority.

139.     At all times material to this Complaint, the IDOC has de facto policies, practices and customs which included, inter alia:

     a.   To not turn in grievances or to make them vanish.

     b.   To not provide inmates with proper and timely care for their mental illness, ADHD and depression

     c.   To maintain the deplorable conditions in the Menard North 2 crisis cells.

     d.   To put inmates with mental illnesses and disabilities in cells with other inmates ill-equipped to handle same knowing altercations and violence will eventually occur.

     e.   To not provide inmates with proper and timely dental care.

140.     The interrelated policies, practices and customs alleged above were well known within the IDOC and by these defendants.  During the relevant time period, the defendants named in this Count had notice of these widespread practices by employees at the IDOC, and in particular at Menard and Dixon.

141.     The widespread practices were allowed to flourish and became so well settled as to constitute de facto policy of the IDOC—because governmental policymakers had authority over same, including the defendants named in this Count, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

142.     The interrelated policies, practices, and customs alleged above were the direct and proximate cause of the unconstitutional acts committed by the defendants and the injuries suffered by plaintiff and described herein.

143.     Plaintiff seeks injunctive and declaratory relief against the defendants named in this Count in their official capacities to prevent the continued violation of his constitutional rights and the rights of others in IDOC custody.

## COUNT XII – Unlawful Policy and Practice
### (Monell Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983)

144.     Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

145.     This Count is alleged against Wexford Health Sources, Inc.

146.     The actions of the individual defendants employed by Wexford were undertaken pursuant to policies, practices, and customs of Wexford, described above and below, which were ratified by policymakers for Wexford with final policymaking authority.

147.     At all times material to this Complaint, Wexford has de facto policies, practices and customs which included, inter alia:

      a.   To not provide inmates with proper care for their mental illness.

      b.   To not prescribe inmates with the proper medication, including the proper medication for ADHD.

      c.   To not diagnose or treat patients with ADHD.

      d.   To not provide doctors that are qualified to, experienced at or merely willing to diagnose certain mental illnesses and particularly ADHD.

      e.   To maintain the deplorable conditions in the Menard North 2 crisis cells.

148.    The interrelated policies, practices and customs alleged above were well known within Wexford.  During the relevant time period, the defendants named in this Count had notice of these widespread practices by employees at Wexford, and in particular at Menard and Dixon.

149.    The widespread practices were allowed to flourish and became so well settled as to constitute de facto policy of Wexford—because they had authority over same, including the defendants named in this Count, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

150.    The interrelated policies, practices, and customs alleged above were the direct and proximate cause of the unconstitutional acts committed by the defendants and the injuries suffered by plaintiff and described herein.

151.    Plaintiff seeks injunctive and declaratory relief against the defendants named in this Count in their official capacities to prevent the continued violation of his constitutional rights and the rights of others in IDOC custody.

## COUNT XIII – Intentional Infliction of Emotional Distress
(State law claim for damages)

152.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

153.    This Count is alleged against all defendants in their individual capacities.

154.    The individual defendants' conduct described above was extreme and outrageous. The defendants' actions were rooted in the abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to plaintiff.

155.    As a direct and proximate result of the defendants' actions, plaintiff suffered and continues to suffer severe emotional distress and pain and suffering.

## COUNT XIV --Failure to Treat (Dental Care)

**(Eighth Amendment Claim for Damages and Declaratory and Injunctive Relief under 42 U.S.C. § 1983)**

156.   Plaintiff repeats and realleges the preceding and following paragraphs as if fully set forth in this Count.

157.   This Count is alleged against the dental staff at Menards. Additionally, plaintiff seeks injunctive and declaratory relief against defendants Director Jeffreys and Dixon Warden Varga in their official capacities to prevent the continued violation of his constitutional rights.

158.   Defendants were involved in and/or oversaw I.M.'s dental treatment during his time at Menard and/or Dixon.

159.   In 2017, IM was seen by the dentist at Menard and was told he had 2 teeth that needed repaired, but one tooth that need addressed sooner rather than later to avoid losing it.

160.   I.M. then went over one year waiting for the dental care and for those 2 teeth to be treated.  During that time, he lived with pain and discomfort, which contributed to his depression and mental anguish.

161.   Defendants' actions described above constitute violations of I.M.'s Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' intentional and/or reckless actions through their denial of timely dental care and deliberate indifference to I.M.'s serious medical and mental health needs violated I.M.'s Eighth Amendment rights and left I.M. with pain, discomfort, depression, thereby causing I.M. to suffer physical and emotional pain.

162.   Defendants' action described herein demonstrate deliberate or reckless indifference to a known risk to I.M.'s health, safety, and wellbeing in violation of I.M.'s Eighth Amendment rights.

163.    The actions of Defendants in failing to either treat or recommend a course of treatment in a timely or reasonable fashion were intentional or done with reckless disregard or deliberate indifference to I.M.'s seriously medical need and exacerbated I.M.'s injuries. Defendants conduct as described herein violated the Eighth Amendment's prohibition against cruel and unusual punishment and continues to do so.

164.    The actions of Defendants, including failing to timely facilitate or properly supervise the scheduling of I.M.'s treatment and failure to refer him to outside specialists, was intentional or done with reckless disregard or deliberate indifferent to I.M.'s serious medical and mental health needs and caused I.M. to needlessly suffer physical and emotional pain as well and continuing injuries.  Defendants' conduct as described herein violated the Eighth Amendment's prohibition against cruel and unusual punishment and continues to do so.

## RELIEF REQUESTED

WHEREFORE, I.M. respectfully requests that this Honorable Court grant the following relief:

1.    Issue an injunction ordering that:

A.    defendants stop subjecting plaintiff to the unlawful policies, practices and conduct described in this Complaint

B.    I.M. is to receive a second opinion from an outside medical doctor(s) and specialist(s) as to the diagnoses, proper treatment, and physical therapy for all of his mental and physical conditions and injuries.

2.    I.M. is to receive any and all treatment recommended by the prescribing physician, and if said treatment cannot be offered at Dixon, then arrangements must be made to satisfy the orders from the prescribing physician.

3.      Award compensatory damages, in an amount to be determined, to I.M. for his physical and emotional injuries, jointly and severally against all Defendants;

4.      Award punitive damages, in an amount to be determined, to I.M., jointly and severally against all Defendants;

5.      Order Defendants to pay I.M.'s costs, expenses and reasonable attorneys' fees;

6.      Grant such other relief as this Court deems equitable, just, and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

Respectfully Submitted,

SWMW LAW, LLC

By:____ /s/ Lucas J. Dalton_____
        Lucas J. Dalton, #6286000
        asbestos@swmwlaw.com
        701 Market Street, Suite 1000
        St. Louis, MO 63101
        (314) 480-5180
        (314) 932-1566 Facsimile